## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21425-Civ-TORRES

ALEXANDER RODRIGUEZ,

      Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,

      Defendant.

_____/

## ORDER ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Alexander Rodriguez ("Plaintiff") [D.E. 30] and Nancy A. Berryhill, Acting Commissioner of Social Security Administration ("Defendant") [D.E. 31] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching his unfavorable decision.   Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's determination.   For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 30] is **DENIED**, Defendant's motion for summary judgment [D.E. 31] is **GRANTED**, and the decision of the ALJ is **AFFIRMED**.[1]

---

[1]    On July 31, 2018, the parties consented to the jurisdiction of the undersigned Magistrate Judge.   [D.E. 13].

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental social security income on October 5 and 8, 2015, because of depression, anxiety, back pain, diabetes, hypertension, and other impairments.[2]   The Commissioner denied Plaintiff's benefits initially and on reconsideration.   Plaintiff filed a written request for a hearing before an ALJ.   The ALJ conducted a hearing on July 19, 2017 and evaluated Plaintiff's application pursuant to the five-step sequential evaluation process for determining if a claimant is disabled under the Social Security Act.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.   The ALJ then proceeded to step two where the ALJ determined that Plaintiff's degenerative disc disease, diabetes mellitus, major depressive disorder, and bipolar disorder were severe impairments. At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or equaled the criteria under the Social Security listings.   The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 CFR 404.2567(b).   At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a handyman and a meat cutter.   And finally, at step five, the ALJ concluded that Plaintiff could perform a significant number of other light unskilled jobs in the national economy, including a position as a mail clerk, scale operator, and brake

---

[2]      Plaintiff was forty-three years old at the time of the ALJ's decision with a twelfth-grade education.

adjuster.   [D.E. 11at 39].   The ALJ therefore denied Plaintiff's claim on September 21, 2017 and the Appeals Council denied Plaintiff's request for review on February 12, 2018.   Accordingly, this case is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record as a whole to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew."   *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).   Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive and we must defer to the ALJ's decision even if the evidence may preponderate against it.   *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).   However, no presumption of validity

3

attaches to the Commissioner's conclusions of law.   *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).   The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.   *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew. Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.    ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ does not make such a finding, then the inquiry ends. *See* 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered

5

alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy

that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in two ways: (1) that the ALJ's evaluation of the medical evidence is flawed, and (2) that substantial evidence does not support the ALJ's rationale for rejecting Plaintiff's allegations of mental impairment.   We will consider each argument in turn.

### A.   *Whether Substantial Evidence Supports the Weight Given to the Medical Opinions*

An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors. *See id*.   Absent good cause, the ALJ must give a treating[3] physician's opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

---

[3]     A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

7

*Phillips*, 357 F.3d at 1241.  "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."  *Id.*  Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore.  *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence).  The opinion of a one-time examiner is not entitled to deference or special consideration.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988).  However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information."  *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)).  The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence.  *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at

8

1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician).   The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion.   *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.   *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).   However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).   This means that if an ALJ makes clear that he considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error.   *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

9

1.    *Dr. Hassan's 2017 Medical Opinion*

First, Plaintiff claims that the ALJ's rationale for discrediting Dr. Hassan's July 2017 medical opinion is unsupported and contrary to evidence in the record. Dr. Hassan opined that Plaintiff had marked limitations in understanding and remembering simple instructions, moderate limitations in carrying out simple instructions, marked limitations in the ability to make judgments on simple work-related decisions, marked limitations in interacting with supervisors and coworkers, and extreme limitations in interacting with the public.   While the ALJ credited Dr. Hassan for his expertise and direct observations, the ALJ ultimately assigned Dr. Hassan's opinion little weight because the evidence did not support the limitations provided in his clinical findings:

> Dr. Hassan's opinion is of note because of his expertise and direct observations of the claimant.  However, the opinion is more limiting than warranted given the totality of the evidence as explained above, and his own clinical findings that, despite depressive symptoms, the claimant was oriented x 3, had fair eye contact, fair insight, and fair judgment.   Therefore, I find that this opinion merits little weight.

[D.E. 11 at 32].

Plaintiff argues that, contrary to the ALJ's determination, Dr. Hassan's opinion is both consistent with his clinical findings and the totality of the evidence. Plaintiff relies, for example, on Dr. Hassan's treatment notes to show that there is no inconsistency between his opinion and the underlying documents:

> Intrusive auditory hallucinations[,] derogatory and command types that interfere with [] concentration, memory and executive functioning, blocking his capacity to remember, make proper judgment or decisions.

10

> Severe paranoia will make him suspicious and withdrawn with defensive anger.   Depression also [does] not allow him to change routine easily.
>
> Client has some cognitive decline due [to] his medications and depression that makes him sedated[,], psychomotor retar[ation], slow thinking, and decreased concentration.

[D.E. 11 at 615-16].

However, Plaintiff's argument is unpersuasive because, while it references some consistencies between Dr. Hassan's opinion and his treatment notes, it ignores other inconsistencies (i.e. Plaintiff's fair eye contact, fair insight, and fair judgment) that the ALJ identified in assigning the opinion little weight.   Plaintiff suggests that the consistencies outweigh the inconsistencies, but this does not mean that the ALJ's decision lacks substantial evidence.   Indeed, we do not reweigh the evidence presented, nor do we substitute our discretion for that of the ALJ even if the evidence may preponderate against it.   *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).   Because the ALJ identified inconsistencies between Dr. Hassan's opinion and his clinical findings and there is more than a scintilla of evidence to support the ALJ's determination that Dr. Hassan's opinion goes beyond the scope of the medical record, the ALJ had good cause to assign Dr. Hassan little weight.   *See Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 658 (11th Cir. 2013) ("These inconsistencies gave the ALJ good cause to accord less weight to Hernandez's treating physicians.").

### 2.   *Dr. Hassan's 2016 Letter and Medical History Summary*

Next, Plaintiff asserts that the ALJ failed to reference in his decision any

11

portion of Dr. Hassan's March 14, 2016 letter or his medical history summary.   [D.E. 11 at 559, 618-19].   That is, although the ALJ assigned Dr. Hassan's July 12, 2017 opinion little weight, Plaintiff alleges that the ALJ failed to consider any portion of Dr. Hassan's other materials.   Because the ALJ failed to reference the March 2016 letter or the medical history summary, Plaintiff concludes that this case must be remanded for further proceedings.

Plaintiff' argument misses the mark because neither Dr. Hassan's March 2016 letter nor his medical history summary contains a medical opinion.   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical and mental restrictions."   20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).   The only "opinion" in Dr. Hassan's March 2016 letter is that Plaintiff will recover from his medical conditions if he is in the company of his family:

> In my professional opinion, he will benefit from having the family support of his wife, who currently lives in Cuba and the return of his son who also lives in Cuba.   Under his wife's care, he will have the opportunity to psychosocially recover and establish individual productive functionality; in order, to avoid him becoming mentally disabled and dysfunctional.

[D.E. 11at 559].

This opinion is not a judgment on the nature and severity of Plaintiff's impairments nor an indication of what Plaintiff can do despite his impairments.   In

fact, Dr. Hassan's letter equates to nothing more than a history of Plaintiff's medical condition, the related treatments, and an opinion that family support will help Plaintiff from becoming mentally disabled and dysfunctional.   Because Dr. Hassan's letter lacks any information on Plaintiff's ability to work, there was no requirement for the ALJ to assign the letter any weight.   *See, e.g., Glover v. Colvin*, 705 F. App'x 815, 817–18 (11th Cir. 2017) (concluding that the ALJ's failure to weigh doctor's opinion that "[r]eliability is likely to be a problem due to mood instability and lack of motivation" was not error because the doctor "did not express that opinion in terms of how it would limit [the claimant's] ability to work" whereas the ALJ correctly weighed opinions finding that the claimant was "limited to simple instructions" and could only handle "occasional interactions with the public.").

Dr. Hassan's medical history summary suffers from the same flaw because it omits any work-related limitations Plaintiff may have, and the extent of those limitations.   This two-page summary provides nothing more than background information on Plaintiff's reported symptoms dating back to his first visit with Dr. Hassan.   The letter describes, in large part, Plaintiff's self-reported symptoms as opposed to any judgment about the nature and severity of Plaintiff's impairments. Near the end of the summary, Dr. Hassan mentions that Plaintiff remains depressive, psychotic, unpredictable, impaired, and dysfunctional, and includes a diagnosis of depression, post-traumatic stress disorder, schizophrenia, diabetes, renal disease and anxiety.   While Dr. Hassan's summary includes a diagnosis of Plaintiff's medical conditions, there is no opinion as to what Plaintiff is still able to do

13

despite them. *See Lara v. Comm'r of Soc. Sec.*, 2017 WL 3098126, at *5–6 (11th Cir. 2017) (concluding that treatment notes that did not contain judgment about the "nature and severity" of claimant's impairments were not medical opinions that the ALJ was required to weigh). Therefore, while Plaintiff complains that the ALJ failed to consider Dr. Hassan's letter and medical summary, these items were not entitled to any weight in the first place. *See Martinez v. Acting Comm'r of Soc. Sec.*, 660 F. App'x 787, 793 (11th Cir. 2016) ("The medical records from Dr. Penate contained only general physical information and a referral to Dr. Ricart. These records did not reflect Dr. Penate's 'judgments about the nature and severity of [Martinez's] impairment' as was necessary to qualify as a 'medical opinion' to be considered by the ALJ.") (citing 20 C.F.R. § 404.1527(a)(2)).

However – assuming *arguendo* that the ALJ should have discussed Dr. Hassan's evaluation of Plaintiff and assigned the 2016 letter and medical history summary some weight – it would not have necessarily changed the ALJ's decision. Dr. Hassan asserts in his 2016 letter, for example, that family support will help Plaintiff *avoid* becoming mentally disabled and dysfunctional. This means, that while Dr. Hassan noted that Plaintiff experiences depression, death wishes, sadness, hopelessness, lack of interest, poor energy level, lack of appetite, paranoia, and hallucinations, Dr. Hassan did not opine that Plaintiff was unable to work because of these conditions.

Accordingly, any error by the ALJ – in failing to discuss and assign weight to Dr. Hassan's 2016 letter and medical history summary – was harmless. *See*

14

*Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. 2014) (finding the ALJ's failure to expressly weigh two medical opinions harmless because the ALJ expressly considered and discussed the evidence on which the doctors based their opinions); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of Hahn, Fritz, Shivashankara, and Gornisiewicz, none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.   That is, while each of these doctors found that Wright suffered from chronic pain or conditions associated with chronic pain, not one of these doctors indicated that Wright is unable to perform sedentary work as a result of that pain.") (internal citation omitted); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)).

      *3.*    <u>*Dr. Ames-Dennard's Medical Opinion*</u>

Third, Plaintiff argues that the ALJ erred in according great weight to the medical opinion of non-examining psychologist Dr. Ames-Dennard because it is inconsistent with Dr. Hassan's opinion and the treatment records of social worker Noemi Marquez ("Ms. Marquez").   Dr. Ames-Dennard opined that Plaintiff had some difficulty responding to changes in the workplace and had to avoid hazards in a routine work environment.   Dr. Ames-Dennard also found that Plaintiff could

understand and remember simple tasks, sustain attention and concentration, and adapt to simple changes.   The ALJ therefore accorded Dr. Ames-Dennard's opinion great weight because of her familiarity with the Social Security regulations, and the consistency of her opinion with the evidence in the record.

Plaintiff suspects that Dr. Ames-Dennard's opinion is based on an incomplete record and lacks a supporting rational.   Plaintiff claims, for example, that Dr. Ames-Dennard failed to consider any conflicting evidence and that most of the evidence in this case was not even received at the date of her opinion. For these reasons, Plaintiff concludes that Dr. Ames-Dennard's opinion cannot assigned great weight and that the ALJ's decision lacks substantial evidence.

Plaintiff's arguments are unpersuasive because – even if a medical opinion fails to consider all the evidence in the record – that, alone, does not undermine the opinion itself.   Instead, Plaintiff's contention goes to the weight that the ALJ should have assigned the opinion.   This means that, even if we assume that Dr. Ames-Dennard did not have the benefit of the entire record at the time she rendered her opinion, it is the role of the ALJ to use his discretion to weigh the evidence presented.

Here, the ALJ determined that Dr. Ames-Dennard's opinion was, in some respects, consistent with Dr. Hassan's opinion because they each found that Plaintiff had fair eye contact, fair insight, fair judgment, and improvement after Plaintiff's compliance with medical requirements.   While Plaintiff may disagree with how the ALJ weighed Dr. Ames-Dennard's opinion, the Social Security regulations provide

16

the ALJ with considerable discretion in "determin[ing] the best way to resolve [an] inconsistency or insufficiency[,] . . . depend[ing] on the nature of the inconsistency or insufficiency."   20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. Sept. 10, 2014) ("When evidence, including opinion evidence, is inconsistent, the ALJ has no duty to consider it.") (citing 20 C.F.R. § 416.920b (providing that, if any record evidence is inconsistent, the ALJ will take the additional step of weighing the relevant evidence to determine disability)).

Plaintiff suggests that the ALJ should have weighed Dr. Ames-Dennard's opinion differently because it omitted conflicting evidence and lacked the benefit of all the documents in the record.  But, there is nothing to suggest that the ALJ abused his discretion if the conflicting evidence that Plaintiff relies upon fails for separate reasons – i.e. Dr. Hassan's 2016 letter and medical summary failing to include a medical opinion.  Plaintiff requests that we second-guess the ALJ's discretion and assign a different weight to Dr. Ames-Dennard's opinion.  But, given that there is no evidence that the ALJ abused his discretion nor any persuasive argument that undermines the ALJ's reasons for assigning Dr. Ames-Dennard's opinion great weight, Plaintiff's third argument lacks merit.

   4.   *Ms. Marquez's Opinion*

Plaintiff's fourth argument is that the ALJ erred when he gave Ms. Marquez's opinion little weight.  The ALJ explained that little weight was appropriate "because a licensed clinical social worker is not an acceptable medical source," and

Ms. "Marquez did not provide a function-by-function analysis." [D.E. 11 at 32]. Plaintiff claims that the ALJ's rationale is legally flawed because a licensed clinical social worker is a medical source and the opinion contains relevant information that merits consideration at step three of the evaluation process. Plaintiff asserts, for example, that Ms. Marquez opined on Plaintiff's history of symptoms, depressed mood, paranoid delusions, decreased attention, and delayed speech. Ms. Marquez's notes also indicate that Plaintiff's lack of family support and legal issues exacerbated his symptoms and caused Plaintiff significant distress. Therefore, Plaintiff concludes that the ALJ's decision lacks substantial evidence.

Plaintiff's argument is misplaced, however, because a clinical social worker is not an acceptable medical source. *See Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) ("'Other sources' include medical sources, who are not "acceptable medical sources," such as licensed clinical social workers.") (citing SSR 06-03p, 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006)). An acceptable medical source is evidence from a physician or psychologist that can establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 416.913(a) ("[A]cceptable medical sources" include physicians, psychologists, and other medical professionals").

Ms. Marquez's opinion, on the other hand, is commonly referred to as an "other medical source" because it may show the severity of an individual's impairment and how it affects the individual's ability to function. *See, e.g.*, 20 C.F.R. §§ 404.1513(a)(1)-(5) & 416.913(a)(1)-(5) (2008) (defining acceptable medical sources as

18

licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).  The difference between the two is that evidence from "other medical sources" cannot establish the existence of a medically determinable impairment as opposed to information from an acceptable medical source.  *See McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016) ("Because a social worker is not listed as an acceptable source, a social worker's opinion cannot be considered in determining the existence of an impairment.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (stating that because a chiropractor "is not considered an 'acceptable source'" under the applicable regulations, "his opinion cannot establish the existence of an impairment")).  An ALJ may therefore use evidence from "other medical sources" to show the severity (but not the existence) of an impairment.

To that end, Plaintiff complains that the ALJ accorded Ms. Marquez little weight.  But, as a clinic social worker and an "other medical source," the ALJ was only "required to consider [Ms. Marquez's] opinion, he was not required to give it significant weight."  *Anteau*, 708 F. App'x at 613; *see also Levie v. Berryhill*, 2018 WL 6434384, at *2 (11th Cir. Dec. 7, 2018) ("[T]he ALJ was not required to give [the] notes [of a social worker and therapist] any special consideration.").  This means that "[w]hile 'other sources' can provide insight into the severity of a claimant's impairments and how the impairments affect his ability to function, the Commission is not required to accept the conclusion from a non-acceptable medical source and may accord such weight as he deems appropriate based upon the medical evidence of

19

record." *Ryan v. Colvin*, 2013 WL 12161866, at *4 (M.D. Fla. Sept. 19, 2013).

Here, the ALJ considered Ms. Marquez's opinion and, after reviewing it, gave it little weight for the omission of a functional assessment. Plaintiff, of course, takes issue with the ALJ's determination, but Plaintiff relies on no authority that required the ALJ to do anything more. Plaintiff suggests that the ALJ was required to examine Ms. Marquez's opinion as if she was an acceptable medical source. This argument is unavailing because Ms. Marquez, as a clinical social worker, is not entitled to any substantial weight – meaning social workers are considered the same as any other lay witness. *See Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 720 (9th Cir. 2012) ("An ALJ can give less weight to an 'other source' medical opinion by providing 'reasons germane to each witness for doing so.'") (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). Because Ms. Marquez's opinion constitutes an "other medical source," and the ALJ provided a reason for assigning it little weight, Plaintiff's fourth argument lacks merit.

### B. *Whether Substantial Evidence Supports the ALJ's Decision to Reject Plaintiff's Allegations of Mental Limitations*

Plaintiff's final argument is that the ALJ's decision to reject Plaintiff's allegations of mental impairment lacks substantial evidence. While the ALJ determined that Plaintiff's "symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the ALJ failed to assess Plaintiff's allegations of mental impairment in at

least four ways.   [D.E. 11 at 28].

First, Plaintiff argues that the ALJ made an unsupported inference that voluntary hospitalizations "corroborate[d] the finding that the claimant's mental impairments [were] not as severe or persistent as alleged."   *Id.* at 29.   Plaintiff claims that his voluntary treatments only meant that he complied with a treating source's recommendation and that the ALJ had no basis to draw a different conclusion.   Second, Plaintiff takes issue with the ALJ's statement that Plaintiff was "on and off medication" and used religious counseling as support for the ALJ's finding that Plaintiff can perform jobs in the national economy within the limits of the RFC.   Third, Plaintiff suggests that the ALJ placed too much weight on Plaintiff's acquisition of a high school education in 1987 because that occurred decades prior to his disability date.   And finally, Plaintiff claims that the ALJ erroneously relied on Plaintiff's travels to Cuba as evidence that Plaintiff was not disabled when that was merely a 90-minute flight to visit family members and to obtain medical treatment.   Therefore, Plaintiff concludes that the ALJ lacked substantial evidence to reject his allegations of mental limitations.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Social Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015)

(quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).   A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If the ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so."   *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ."   *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also*   SSR 96-7P, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of the claimant's reports of the severity of her condition, an ALJ may examine the extent to which a claimant has sought medical treatment.   SSR 96-7p, 1996 WL 374186, *7.   An ALJ also may consider whether tests results in medical records reveal normal findings.   *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions, MRI scans were normal, doctors recommended conservative treatments,

and claimant could engage in a range of activities).   Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding.   *See* 20 C.F.R. §§ 404.1529(c)(3).   And when examining daily activities, an ALJ must consider the record as a whole.   *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significant affected").   This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability.   *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

Here, the ALJ determined that Plaintiff's mental impairments were not as severe as alleged.   Plaintiff complains that the ALJ misconstrued Plaintiff's allegations and made unsupported inferences.   Even if we agreed that the ALJ made unfounded inferences on Plaintiff's religious counseling, travels to Cuba, high school education, and voluntary hospitalizations, there were a plethora of additional reasons to support the ALJ's conclusion that Plaintiff's impairments did not go hand in hand with his allegations.

The ALJ noted, for example, that Plaintiff (1) was self-employed for several years, (2) improved his medical condition after complying with hospital treatment plans, (3) paid bills, counted change, and used a checkbook/money orders, (4) acted appropriately around others, (5) cleaned his room and clothes, (6) drove and shopped independently, and (7) dressed and fed himself.   [D.E. 11 at 29-30].   The ALJ then coupled that evidence with the findings of the treating physicians who determined

that Plaintiff had fair eye contact, fair insight, and fair judgment.   While Plaintiff may disagree with how the ALJ weighed the record presented, the ALJ clearly considered the medical evidence and provided specific reasons for discrediting Plaintiff's allegations.   We therefore conclude that substantial evidence supports the ALJ's decision.   *See, e.g., Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 513-14 (11th Cir. 2011) (finding that an ALJ sufficiently assessed the credibility of a claimant's testimony where the ALJ thoroughly discussed the claimant's allegations in light of the record as a whole); *Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 347-49 (11th Cir. 2005) (concluding that an ALJ properly rejected the claimant's subjective testimony because the testimony was unsupported by clinical or laboratory findings and because the testimony was inconsistent with other medical evidence and the claimant's daily activities).

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings.   *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court therefore finds that the ALJ's conclusions are supported by substantial evidence.   For these reasons, Plaintiff's motion for summary judgment [D.E. 30] is **DENIED** and Defendant's motion for summary judgment [D.E. 31] is **GRANTED**.

## IV.     CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.   The ALJ's decision applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.   For the foregoing reasons, Plaintiff's motion for summary judgment [D.E. 30] is **DENIED**, Defendant's motion for summary judgment [D.E. 31] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of April, 2019.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge